The information available on Case.net is provided as a service and is not considered an official court record.


Case.net:26SL-CC06358 - AUGUSTYN DISTRIBUTING LLC V CAMPBELL SALES CO (E-CASE) - Docket Entries

**Sort by date:** Descending Ascending **Display options:** All Entries

**09/29/2026**

**Affidavit Filed**

Return of Service.

**Filed By:** DAVID GORDON BENDER

**On Behalf Of:** AUGUSTYN DISTRIBUTING LLC

**Agent Served**

Document ID - 26-SMCC-11802; Served To - CAMPBELL SALES COMPANY OF NEW JERSEY; Served Date - 09/22/2026; Served Time - 00:00:00; Service Type - SP; Reason Description - SERV; Service Text -

**09/21/2026**

**Summons Issued-Circuit**

Document ID: 26-SMCC-11802, for CAMPBELL SALES COMPANY OF NEW JERSEY Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-11801, for PEPPERIDGE FARM, INC. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-11800, for SNYDER'S-LANCE, INC. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**09/18/2026**

**Filing Info Sheet eFiling**

**Filed By:** DAVID GORDON BENDER

Summ Req-Circuit Pers Serv

Request for Appointment of Special Process Server.

**Filed By:** DAVID GORDON BENDER

**On Behalf Of:** AUGUSTYN DISTRIBUTING LLC

Pet Filed in Circuit Ct

Petition-Injunctive Relief, Accounting, Breach of Contract and Negligence; Exhibit 1.

**Filed By:** DAVID GORDON BENDER

**On Behalf Of:** AUGUSTYN DISTRIBUTING LLC

**Judge Assigned**

DIV 2

**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| AUGUSTYN DISTRIBUTING, LLC<br><br>Plaintiff,<br><br>vs.<br><br>CAMPBELL SALES COMPANY OF NEW JERSEY<br>**Serve:** CSC – Lawyers Inc. Service Co.<br>221 Bolivar Street<br>Jefferson City, Missouri 65101<br><br>and<br><br>PEPPERIDGE FARM, INC.<br>**Serve at:** CSC – Lawyers Inc. Service Co.<br>221 Bolivar Street<br>Jefferson City, Missouri 65101<br><br>and<br><br>SNYDER'S-LANCE, INC.<br>**Serve at:** CSC – Lawyers Inc. Service Co.<br>221 Bolivar Street<br>Jefferson City, Missouri 65101<br><br>Defendants. | ) | Cause No.<br><br>Division |

**PETITION – INJUCTIVE RELIEF, ACCOUNTING,**
**BREACH OF CONTRACT AND NEGLIGENCE**

COMES NOW Plaintiff, by and through counsel, and for its Petition hereby states as follows:

**Allegations Common to All Counts**

1. Plaintiff is now and at all times relevant a domestic limited liability company existing under and in accordance with the laws of the State of Missouri.

**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

2. Defendant Campbell Sales Company of New Jersey (hereinafter "Campbells") is a foreign corporation actively conducting business in the County of St. Louis, State of Missouri.

3. Defendant Pepperidge Farm, Inc. (hereinafter "Pepperidge Farm") is a foreign corporation actively conducting business in the County of St. Louis, State of Missouri.

4. Defendant Snyder's-Lance, Inc. (hereinafter "Snyder's") is a foreign corporation actively conducting business in the County of St. Louis, State of Missouri.

5. Plaintiff herein is the former owner of five (5) Exclusive Distributorship Routes (three Pepperidge Farm Snack, one Pepperidge Farm Bread/Bakery and one Snyder's) and is currently the owner of four (4) Exclusive Distributorship Routes (two Pepperidge Farm Snack, one Pepperidge Farm Bread/Bakery and one Snyder's).

6. On or about August 2026, Defendants advised Plaintiff that due to an inventory discrepancy, Plaintiff owed Defendants approximately $100,000.00.

7. Immediately after notifying Plaintiff of the alleged inventory discrepancy, Defendants began withholding and garnishing 100% of all monies earned by Plaintiff with respect to one (1) Pepperidge Farm Snack route and one Snyder's route, such that Plaintiff has received zero commissions, compensation, or income for either of those routes since the middle of August, 2026, while still incurring all of the expenses required to effectively run said routes.

8. Additionally, with respect to the sale of a Pepperidge Farm Exclusive Distributorship Route that Plaintiff sold prior to August 2026, Defendants withheld, garnished, and failed to pay to Plaintiff $15,000.00 of sales proceeds owed to Plaintiff for the sale of said route.

**Count I – Injunctive Relief**

**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

9. Plaintiff restates and incorporates by reference hereto each and every allegation contained in paragraphs 1 through 8.

10. As a direct and proximate result of Defendants actions in withholding, garnishing, converting, and/or failing and refusing to pay to Plaintiff any monies whatsoever earned by Plaintiff from two of Plaintiff's distributorship routes, Plaintiff has received zero funds and zero paychecks therefrom since the middle of August, 2026 and accordingly is suffering immediate and irreparable harm for which Plaintiff has no adequate remedy at law.

11. Plaintiff is likely to succeed on the merits of this action and absent injunctive relief, Plaintiff will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully prays this Court grant injunctive relief in its favor and against Defendants, prohibiting and enjoining Defendants from withholding, garnishing, converting, and/or otherwise failing to provide Plaintiff with any of the monies he is earning with respect to his exclusive distributorships on a weekly basis, for Plaintiff's cost incurred herein, reasonable attorney fees, and any other or further relief this Court deems just and proper under the circumstances.

**Count II – Accounting**

12. Plaintiff restates and incorporates by reference hereto each and every allegation contained in paragraphs 1 through 11.

13. Defendants herein, absent providing Plaintiff with any accounting relating to how the $100,000.00 inventory discrepancy was arrived at, have simply maintained that is the amount of the monies owed to Defendants from Plaintiff and absent a detailed accounting from Defendants

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

substantiating said amount, Plaintiff is unable to verify and ascertain the accurateness of said alleged discrepancy.

WHEREFORE, Plaintiff respectfully prays this Court grant judgment in its favor and against Defendants on Count II of this Petition for a full and complete accounting relating to the alleged inventory discrepancy that Defendants have asserted is approximately $100,000.00.

**Count III – Breach of Contract**

14. Plaintiff restates and incorporates by reference hereto each and every allegation contained in paragraphs 1 through 13.

15. Pursuant to paragraph 2 of the Exclusive Distributorship Consignment Agreement (hereinafter " Contact") entered into by and between Plaintiff and Defendant Pepperidge Farm, "Bakery will consign and deliver to Consignee at such locations as shall, from time to time, be designated by Bakery, and Consignee will accept sufficient quantities of consigned products to maintain at all times, an adequate and fresh supply thereof in all retail stores in the Territory which request such products and whose accounts are not demonstrably unprofitable… Title to all Consigned Products shall be vested in, subject to, and under the control of Bakery until delivered by Consignee to a Purchaser." *See Exhibit 1 attached hereto and incorporated herein.*

16. Based upon security footage reviewed by a warehouse manager, certain volumes of Consigned Products ordered by Plaintiff were stolen from Plaintiff on at least two occasions that Plaintiff is aware of.

17. Additionally, upon information and belief, warehouse employees of Defendants, who are responsible for distributing the truckloads of Consigned Products to each route owners designated area, failed to deliver and provide to Plaintiff the correct amount of product, meaning

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

the amount of product ordered by Plaintiff, to be distributed by said warehouse employees to Plaintiff's designated area, were not delivered thereto.

18. As a direct and proximate result of Defendants' employees failure to accurately disseminate the truckloads of delivered product to the designated warehouse location for Plaintiff's products, Plaintiff has been damaged.

19. In that title to all Consigned Products "shall be vested in, subject to, and under the control of Bakery until delivered by Consignee to a Purchaser", Defendants, by and through their employees/agents, have breached the terms of the Contract by failing and refusing to maintain proper control of the product by failing to disseminate the truckloads of ordered product in the correct amount/quantities to Plaintiff, at Plaintiff's designated location.

20. As a direct and proximate result of Defendants' breach of contract as afore-described, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully prays this Court grant judgment in its favor and against Defendants, jointly and severally, on Count III of this Petition in an exact amount to be proven at Trial, in excess of $25,000.00, for Plaintiff's cost incurred herein, reasonable attorney fees, and any other or further relief this Court deems just and proper under the circumstances.

**Count IV – Negligence**

21. Plaintiff restates and incorporates by reference hereto each and every allegation contained in paragraphs 1 through 20.

22. Defendants, as the title owners and the entities having control of all inventory (consigned products) prior to it being delivered by Consignee to a Purchaser, had a duty to ensure that the nature and amount of product ordered by a Consignee was accurately distributed to and provided to Consignee at its designated location within the warehouse.

**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

23. Defendants breached that duty by failing to provide Plaintiff with the correct quantity of product, based upon Plaintiff's specific orders, at Plaintiff's designated location at the warehouse, and said breach directly and proximately resulted in damages to Plaintiff, specifically an alleged inventory discrepancy in the amount of approximately $100,000.00

WHEREFORE, Plaintiff respectfully prays this Court grant judgment in its favor and against Defendants, jointly and severally, on Count IV of this Petition in an exact amount to be proven at Trial in excess of $25,000.00, for Plaintiff's cost incurred herein, reasonable attorney fees, and any other or further relief this Court deems just and proper under the circumstances.

Respectfully submitted,

ROSENBLUM GOLDENHERSH, PC

/s/ David G. Bender
DAVID G. BENDER, 53482
7733 Forsyth, 4th Floor
Clayton, MO 63105-1812
(314) 726-6868, Ext. 217
(314) 726-6786 Facsimile
dbender@rgsz.com
Attorneys for Plaintiff

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

## VERIFICATION

I, Mark Augustyn, as sole Member of Augustyn Distributing, LLC, do hereby state and affirm that the allegations contained in this Petition are true and correct to the very best of my knowledge, information and belief as of this time.

AUGUSTYNN DISTRIBUTING, LLC

By: Mark Augustyn, as Sole Member

Subscribed and sworn to before me, a Notary Public, this 16th day of September 2026.

Notary Public

My Commission Expires:

CYNTHIA L. COPE
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES APRIL 2, 2030
JEFFERSON COUNTY
COMMISSION #14863365

26SL-CC06358



Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

# CONSIGNMENT AGREEMENT

* * *

## PEPPERIDGE FARM, INCORPORATED

HEREBY GRANTS

AN

EXCLUSIVE DISTRIBUTORSHIP

TO

| | |
|---|---|
| DISTRIBUTOR NAME: | Augustyn Distributing, LLC |
| DISTRIBUTOR ADDRESS: | 3600 Canal, St. Charles, Missouri 63301 |
| DISTRIBUTOR NUMBER: | 57749 |

AS A
CONSIGNEE
WITHIN THE TERRITORY AND UPON THE
TERMS STATED IN THE FOLLOWING PAGES

WITH GUARANTY BY

| | |
|---|---|
| GUARANTOR NAME: | Mark Augustyn |
| GUARANTOR ADDRESS: | 3600 Canal, St. Charles, Missouri 63301 |

AS GUARANTOR

| | |
|---|---|
| EFFECTIVE DATE: | November 17, 2025 |
| ROUTE TYPE: | Snacks |
| ROUTE NUMBER: | 9012156 |

EXHIBIT
1



EXHIBIT A

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

## DEFINITIONS

(a) BAKERY —— refers to PEPPERIDGE FARM, INCORPORATED, the grantor of the Distributorship, a Connecticut corporation having its principal office in Camden, New Jersey.

(b) CONSIGNEE —— refers to the grantee of this Distributorship identified on the cover page of this Agreement.

(c) TERRITORY —— refers to the territory described in Schedule A hereto.

(d) CONSIGNED PRODUCTS —— refers to those products listed in Schedule B hereto (subject to modification per Paragraph 10) but only when packaged or wrapped in retail packaging under the brand name "Pepperidge Farm" and sold or intended to be sold to retail stores as fresh (i.e. not preserved or stale), first quality (i.e. not Seconds) merchandise and does not include (1) any of such products sold, or intended to be sold to retail stores, frozen, refrigerated, canned, or otherwise preserved, (2) any of such products sold, or intended to be sold, to retail stores in a raw or uncooked state, (3) any of such products sold, or intended to be sold, to retail stores in bulk for resale by such retail stores at an in-store bakery or at a food-service counter or food-service section located within such retail store, (4) Stale Products, (5) Seconds, (6) merchandise of others containing Consigned Products as components, (7) any of such products packaged or wrapped in food-service or other non-retail packaging or (8) any of such products packaged, wrapped or sold under any brand name other than "Pepperidge Farm."

(e) STALE PRODUCTS —— refers to Consigned Products whose shelf life has expired, as determined by Bakery's stale policy existing from time to time.

(f) SECONDS —— refers to Consigned Products which do not meet the high standards required by Bakery for distribution in the ordinary manner and thus are deemed by Bakery, in its sole discretion, to be unsuitable for that purpose.

(g) DISTRIBUTION OR DISTRIBUTE —— refers to the sale and delivery of Consigned Products to retail stores within the Territory and to such hotels, restaurants, etc., as may be authorized by Bakery per Paragraph 9.

(h) BULLETIN PRICES —— refers to the prices for Consigned Products charged by Bakery and published from time to time.

(i) CHAIN —— refers to any person, firm, corporation or other legal entity that owns or operates three or more retail stores.

(j) DISTRIBUTORSHIP—— refers to the distribution rights described in, and established under, this Agreement.

(k) GUARANTOR —— refers to the guarantor of Consignee's duties and obligations under this Agreement identified on the cover page hereof.

## TERMS

1. EXCLUSIVE OF DISTRIBUTORSHIP. Consignee will have the exclusive right to distribute Consigned Products to retail stores within the Territory, and Bakery will not sell or deliver or authorize any others to sell or deliver Consigned Products to retail stores (except for the in-store bakeries, food-service counters and food-service sections located in retail stores) within the Territory except in connection with temporary sales programs and except for sales to direct customers pursuant to orders solicited by Consignee under Paragraph 3 (b); provided, however, that Bakery will have the exclusive right to distribute Consigned Products to retail facilities owned or operated by Bakery or by any corporation controlled by Bakery. The terms of this Paragraph are subject, however, to the terms of Paragraphs 6, 7, and 9.

2. QUANTITIES CONSIGNED. Bakery will consign and deliver to Consignee at such locations as shall, from time to time, be designated by Bakery, and Consignee will accept sufficient quantities of Consigned Products to maintain at all times, an adequate and fresh supply thereof in all retail stores in the Territory which request such products and whose accounts are not demonstrably unprofitable; provided, however, Bakery reserves the right to allocate its products as nearly proportionately as practicable if the overall demand for its products exceeds its production. Consignee shall hold and care for all Consigned Products as the sole and exclusive property of Bakery. Title to all Consigned Products shall be vested in, subject to, and under the control of Bakery until delivered by Consignee to a purchaser. Consignee shall not encumber or grant any security interest in or lien on, or by action or inaction cause or allow any encumbrance, security interest or lien to be imposed upon, the Consigned Products.

3. PROCEEDS AND RECORDS OF SALE.

(a) Except as provided in subparagraph (b), Consigned Products shall be consigned to Consignee at Bulletin Prices, less the percentage specified in Schedule B, for sale and delivery to retail stores at such prices as Consignee may determine.

(b) Bakery may bill directly any Chains and military commissaries that have requested such direct billing or that request it in the future. Such directly billed stores in the Territory will be direct customers of Bakery, and Consignee will solicit sales from them and receive product for delivery to them on Bakery's behalf at Bulletin Prices. Bakery assumes all credit risks with respect to Chains and military commissaries which receive such direct billing. The funds owed by such chains and military commissaries as a result of the Consigned Products delivered are accounts receivable of, and debts payable to, Bakery and are not the property of Consignee. Consignee shall have the exclusive right to perform the service of delivery of Consigned Products to such customers of Bakery and Bakery shall not effect such delivery except through Consignee, subject to the provisions of Paragraphs 1, 6, 7, and 9. For the performance of its services of solicitation and delivery under this subparagraph (b), Consignee, if it shall have made prompt and timely delivery of all charge tickets as required by subparagraph (d) (2), shall be paid a percentage of net proceeds payable to Bakery by the direct billing customers, such percentage to be calculated at the rate specified in Schedule B.

(c) Bakery may from time to time extend credit to Consignee for Consigned Products to be sold to retail stores on credit extended by Consignee; provided Bakery has approved in advance the stores to receive such credit and the amount and terms thereof. Notwithstanding the foregoing, any credit extended by Consignee shall be at Consignee's risk.

(d) (1) Consignee shall pay promptly each week on the day specified by Bakery for all Consigned Products sold and delivered by Consignee during the preceding week, less any amounts which would be otherwise due on such sales as to which Bakery



EXHIBIT A

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

shall have extended credit to Consignee under (c) above, plus any amounts becoming due during such week under the terms of credit extended during any previous week.

(2) Consignee shall promptly deliver to Bakery on such days as Bakery may specify all charge tickets for all deliveries of Consigned Products to direct customers of Bakery for direct billing by Bakery.

(e) Consignee will keep such records of Consigned Products received and sales and deliveries made as Bakery may from time to time reasonably request; Bakery may inspect such records and Consigned Products at such times as Bakery may select. Without limiting the generality of the foregoing, Consignee agrees that Bakery may take physical inventory of Consigned Products in Consignee's possession whenever and as often as Bakery deems advisable and that Consignee will keep such records of its operation and will furnish Bakery such copies thereof as Bakery may reasonably require.

4. DISTRIBUTION EFFORTS. Consignee will use its best efforts to realize the full sales potential of the Territory for Consigned Products. To this end, Consignee will (a) actively solicit all retail stores in the Territory whose accounts can by profitably handled, (b) maintain at all times an adequate and fresh supply of Consigned Products in all such retail stores, (c) provide distribution service to all such retail stores on such days of the week (including weekends), at such intervals and with such frequency as is necessary to realize the full sales potential thereof and to maintain an adequate and fresh supply of Consigned Products therein, (d) make available to all such retail stores all varieties of authorized Consigned Products unless it is demonstrably unprofitable to do so, (e) cooperate with Bakery in the effective utilization of Bakery's advertising, sales promotion and space merchandising programs and (f) keep fully informed of Bakery's recommended policies and methods for increasing sales and improving distribution service. Consignee may sell or distribute other products, not competitive with Consigned Products, so long as such sale or distribution does not otherwise violate any terms or conditions of this Agreement or interfere with Consignee's performance of its obligations under the terms of this Agreement. Bakery may, from time to time, establish reasonable sales and/or distribution goals for Consignee and this Distributorship. Consignee shall either meet or exceed such goals.

5. DISTRIBUTION SERVICE AND FACILITIES. Consignee will maintain efficient distribution service throughout the Territory in keeping with the established reputation of Bakery and the high quality of its products. To this end, Consignee will (a) provide adequate equipment and, if not otherwise provided by Bakery, facilities for the receipt, handling and delivery of Consigned Products and the accounting, inventory and billing thereof, including, without limitation, such computer and/or other systems as may be necessary or appropriate therefor and (b) comply with all laws and regulations relating either directly or indirectly to the operation or ownership of the Distributorship, including, without limitation, motor vehicle, food, drug, health and sanitary laws and regulations and (c) maintain such route books and other records as are required by Bakery from time to time. Pursuant to the foregoing, Consignee shall provide, and shall maintain in good and proper working condition and appearance, a delivery truck(s), computer and such other equipment as, from time to time, shall be necessary for the operation of the Distributorship. Consignee shall maintain the general appearance and condition of such truck(s), computer and other equipment, as well as the appearance and deportment of all Consignee's officers, directors, employees, agents, representatives and helpers, in accordance with the established reputation of Bakery and the high quality of its products.

6. EMERGENCY SERVICE. If, by reason of illness or vacation or any other cause, Consignee shall be unable at any time to provide or maintain the efficient distribution service contemplated by this Agreement, Consignee will make other suitable arrangements at its own expense for the provision and/or maintenance of such service; but if Consignee is unable or fails to do so, Bakery is authorized in its discretion to provide and/or maintain such service as Consignee's agent and at Consignee's expense and risk. Upon the request of Consignee, Bakery will endeavor in any emergency to provide and/or maintain such service as Consignee's agent and at Consignee's expense and risk.

7. FAILURE TO SERVICE PARTICULAR STORES. If Consignee fails for any reason to provide or maintain satisfactory distribution service to any segment of the Territory or to any retail store within the Territory, and such failure is not remedied within five days after written notice thereof from Bakery, Bakery, in addition to the other remedies available to it hereunder, may make other arrangements, on either a permanent or temporary basis, in the discretion of Bakery, for the service of such store or segment of the Territory, as the case may be. If such arrangements for service are made on a permanent basis, the retail store or segment of the Territory involved shall be deemed to be no longer included in the Territory and Schedule A shall be modified accordingly, all without compensation or remuneration to Consignee.

8. CHAIN STORE ACCOUNTS. If any Chain requires that authorization for the distribution of Consigned Products to the Chain's retail stores in the Territory shall be obtained through a central or district office located outside of the Territory, or only in conjunction with the distribution of Consigned Products to its retail stores in other territories, Bakery will cooperate with Consignee in procuring such authorization. If any Chain refuses to pay or to permit store managers to pay any Consignee directly for Consigned Products and, instead, requires the submission of a consolidated bill to a central or district office of the Chain, Bakery will handle the billing, and the terms of Paragraph 3 (b) shall apply.

9. PROHIBITED SALES AND DELIVERIES. Consignee will not sell or deliver any Consigned Products, or any products listed in Schedule B, directly to consumers or to any other purchasers except retail stores (exclusive of the in-store bakeries, food-service counters and food-service sections located in such retail stores) within the Territory and such hotels, restaurants, clubs and similar organizations within the Territory as Bakery may authorize in writing. Also, Consignee will not, without like authorization, make deliveries of Consigned Products to any Chain via a central or district warehouse or in any manner other than directly to its retail stores. If, despite the good faith efforts of Consignee and Bakery to obtain permission from any Chain to make deliveries directly to its retail stores, such Chain refuses to handle Consigned Products except via warehouse deliveries, Bakery shall have the right in its discretion to sell and deliver the Consigned Products directly to such chain for its own account via warehouse deliveries as long as such refusal remains in effect. In addition, Consignee shall, if requested to do so in writing by Bakery, on a non-exclusive basis and for the period



EXHIBIT A

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

of time set forth in such written request, distribute products listed in Schedule B (as modified from time to time pursuant to Paragraph 10) to in-store bakeries and to food-service counters and food-service sections located in retail stores in the Territory.

10. MODIFICATION OF LIST PRODUCTS. The list of Consigned Products set forth in Schedule B hereto may be modified or changed by Bakery from time to time by (a) adding such other products as it may deem advisable among those which it now or hereafter produces, (b) withdrawing within any sales district or other geographic area any Consigned Products (whether originally listed or subsequently added) which it discontinues producing or which it discontinues selling in such sales district or other geographic area or (c) adding or withdrawing at any time with or without notice and for any reason any product designated as "test product," "for market test" or the like. In addition, Bakery shall have the right from time to time to change the ingredients, the method of production or the labeling or packaging of any Consigned Products. In addition, if Consignee fails to comply with the terms and conditions of this Agreement with respect to any Consigned Product or Consigned Products, then Bakery may, in addition to any other remedies available to it hereunder, if such failure shall continue for a period of thirty days after written notice thereof from Bakery, without compensation or remuneration to Consignee, delete such Consigned Product or Consigned Products from Schedule B, in which event Consignee's right to distribute such deleted Consigned Products under the terms of this Agreement shall immediately terminate.

11. SALES DATA. Consignee will furnish to Bakery such sales data as it may reasonably require for the planning of its production schedules, the expansion of its operations and the planning and conduct of sales promotion programs.

12. TRADE NAME, ETC. Consignee may use Bakery's trade name, trademark and distinguishing colors on its truck(s) and other equipment and supplies; provided, however, that (a) Bakery's trade name may not be used as a part of any business name or trade name of Consignee without the written consent of Bakery or in any other way which will tend to confuse the separate identities of Bakery and Consignee, and (b) Bakery shall have the right at any time to revoke the permission granted in this Paragraph if, in its opinion, the general appearance of Consignee's truck(s) or other equipment or the general appearance or deportment of all Consignee's officers, directors, employees, agents, representatives and helpers, shall fall below standards in keeping with the established reputation of Bakery and the high quality of its products.

13. INSURANCE AND INDEMNIFICATION. Consignee shall, at Consignee's expense, maintain adequate public liability, property damage and, where appropriate, workers' compensation insurance to protect Bakery and Consignee against any and all claims of personal injury, death or property damage, other than damage to Consigned Products in possession of Consignee. Such insurance shall be in such amounts and have such limits as shall be acceptable to Bakery or required by the retail stores in the Territory, whichever is greater, shall name Baker as an additional insured thereunder and shall provide that the insurance shall not be terminated without at least fifteen (15) days' prior written notice to Bakery. Consignee shall, prior to the date of execution of this Agreement, and at least annually thereafter, provide Bakery with insurance certificates evidencing such coverage. If Consignee fails to obtain or to maintain the insurance coverage required by this Paragraph, Bakery may, at its option, purchase such insurance coverage on behalf of Consignee, and Consignee shall reimburse Bakery in full for the cost thereof. Consignee covenants and agrees to indemnify, defend and save Bakery harmless from and against any and all claims relating to payroll, unemployment compensation, employee benefits, personal injury, death, or property damage (other than damage to Consigned Products in the possession of Consignee) caused or alleged to have been caused directly or indirectly by or as a result of the actions of Consignee or any of its officers, directors, employees, agents, representatives or helpers, or by or as a result of the operation of the Distributorship or any vehicle or equipment owned or used by Consignee or any of its officers, directors, employees, agents, representatives or helpers, and any and all losses, damages, liabilities and expenses (including attorney's fees) incurred by Bakery as a result thereof. Anything in this Agreement to the contrary notwithstanding, this indemnification provision shall survive any termination of this Agreement.

14. NON-PERFORMANCE FOR REASONS BEYOND CONTROL. Neither Bakery nor Consignee shall be liable for any failure to comply with the terms of this Agreement if such failure shall have been caused primarily by fire, labor dispute, strike, war, insurrection, governmental restriction or any other cause beyond the control of the party so failing.

15. INDEPENDENT CONTRACTOR. Consignee is a self-employed independent contractor, not an agent or employee of Bakery, and has no authority other than to distribute products consigned hereunder and to solicit orders for and make deliveries of Consigned Products in the case of direct sales of Bakery under Paragraph 3 (b), express or implied, to do or perform any act or thing or to make any warranty or representation or promise or commitment of any character which will be binding upon Bakery or for which it will be responsible, and Consignee will refrain from any conduct inconsistent with the terms of this Paragraph 15. Consignee may, at its own expense and risk, employ such persons as Consignee shall deem appropriate to assist in the performance of Consignee's obligations under the terms of this Agreement; and Consignee shall be responsible for the hiring, firing, training and supervision of, and all remuneration and benefits for, any person so employed. The independent contractor relationship between Bakery and Consignee is an essential element of this Agreement. The discount percentage and commission rate described in Paragraph 3 and the percentages established pursuant to Schedule B or any similar schedule under this Agreement are based in substantial part on such independent contractor relationship and the understanding that the Bakery is not obligated to pay any FICA, income or similar tax or withholding for or on behalf of the Consignee.

16. LIEN OF BAKERY ON DISTRIBUTORSHIP. Bakery shall have a first lien on the Distributorship and all proceeds of the Distributorship as security for all indebtedness of Consignee to Bakery at any time outstanding. Any sale, transfer or assignment of the Distributorship (invalid per Paragraph 18 without the written approval of Bakery) shall be subject to such lien unless such lien shall be expressly released by Bakery in writing. Consignee shall not, without the prior written consent of Bakery, encumber or grant any security interest in or lien upon, or by its action or inaction cause or allow any encumbrance, security interest or lien to be imposed upon this Distributorship, other than the lien imposed by this Paragraph 16; and it is expressly agreed that Bakery shall have no obligation whatsoever to consent to any such encumbrance, security interest or lien unless and until the proposed lienholder shall have agreed in writing to subordinate its lien, encumbrance or security interest to the lien created by this Paragraph 16. Bakery's consent to any such

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

encumbrance, security interest or lien which has been so subordinated to the lien of Bakery established pursuant to this Paragraph 16 shall not be unreasonably withheld.

17. RIGHT OF FIRST REFUSAL. Consignee must give Bakery written notice of each proposed sale, conveyance or transfer (hereinafter "proposed sale") of all or any portion of this Distributorship, which notice shall identify the prospective purchaser and the terms and conditions of the proposed sale. Such notice of proposed sale from Consignee shall be deemed to be an irrevocable offer to sell the Distributorship, or the portion thereof described in such notice of proposed sale, to Bakery on the terms and conditions set forth therein. Bakery shall have the right, but not the obligation, to accept such offer by giving Consignee written notice of acceptance within thirty days of the later of (i) Bakery's receipt of Consignee's written notice of proposed sale or (ii) Bakery's receipt of the full and complete application of the prospective purchaser, including all requested financial and credit information (which right is hereinafter referred to as the "Right of First Refusal"). Such notice of acceptance from Bakery shall be deemed to be an acceptance of Consignee's offer of sale, and the sale of the Distributorship, or the portion thereof offered for sale, by Consignee to Bakery, on the terms set forth in the notice of proposed sale, shall be consummated at a closing to be held within thirty days of such notice of acceptance. Bakery's failure or refusal to exercise any Right of First Refusal hereunder does not constitute, and shall not be deemed to be, an approval by Bakery of the proposed sale or the proposed purchaser. Any change in the identity of the proposed purchaser or in any terms of any proposed sale from those identified in any notice from Consignee to Bakery hereunder shall be deemed to be a new proposed sale with respect to which Consignee must give Bakery a new notice and a new Right of First Refusal in accordance with the terms of this Paragraph 17.

18. SALE OF DISTRIBUTORSHIP. The Distributorship may not be sold, conveyed or transferred by Consignee in whole or in part without the prior written approval of Bakery. Bakery will grant such approval with respect to a proposed sale if (i) Consignee has given Bakery proper and timely notice of such proposed sale as required by Paragraph 17, (ii) Bakery has not exercised, or has in writing refused to exercise, its Right of First Refusal with respect to such proposed sale and (iii) the purchaser meets the requirements of Bakery as to character, ability, financial responsibility, business acumen, adequate facilities and involvement in the business; provided, however, that any such approval shall be conditioned upon Consignee's payment in full, prior to such sale, of all Consignee's indebtedness to Bakery. In addition, where such proposed sale involves the division of the Territory or the sale of only a portion of the Distributorship, such proposed sale is subject to, and may not be effected without, Bakery's prior written approval of the division of Territory sought to be effected thereby. Bakery will notify Consignee with reasonable promptness of its approval or disapproval of any proposed sale and, if applicable, of any proposed division of the Territory. Any transaction or instrument which purports to constitute an assignment of this Agreement or a sale, transfer or assignment of the Distributorship, as a whole or in part, without such written approval shall be void. Any transaction or instrument which purports to constitute an assignment of this Agreement or a sale, transfer or assignment of this Distributorship, as a whole or in part, on terms that are different from those set forth in, or to a party different from the proposed purchaser identified in, the notice of proposed sale given Bakery pursuant to the terms of Paragraph 17 shall be void. Any valid sale of this Distributorship as a whole shall operate to release Consignee from all obligations to Bakery hereunder except the obligation to pay in full any adverse balance in its account with Bakery, and Bakery shall have the right in its discretion to require the purchaser to accept a new consignment agreement in substantially the same form, in lieu of continuing this Agreement in effect, in whole or in part, on an assigned basis.

19. TERMINATION OF CONSIGNMENT AGREEMENT FOR CAUSE. Bakery, in addition to all other remedies available to it at law or equity and to the extent permitted by law, shall have the right in its discretion to terminate this Agreement at any time, upon written notice to Consignee, for any of the following causes:

(a) failure of Consignee adequately to realize the sales potential of the Territory and Consignee's failure to make satisfactory improvement within thirty days after notice of inadequacy from Bakery;

(b) failure of Consignee to the perform or comply with any material term or provision of this Agreement and the continuance of such failure for seven days after written notice thereof from Bakery;

(c) failure of Consignee to maintain the general appearance and condition of its truck(s) or other equipment or the general appearance or deportment or that of any of its officers, directors, employees, agents, representatives or helpers, in accordance with standards in keeping with the established reputation of Bakery and the high quality of its products and the continuance of such failure for more than five days after written notice thereof from Bakery;

(d) any repeated failure of the type described in any of subparagraphs (a) through (c) above, even though a previous failure or failures may have been corrected after notice;

(e) any dishonesty of Guarantor or Consignee or any of its officers, directors, employees, agents, representatives or helpers in his/her or its dealings with Bakery or with others in connection with Consignee's distribution services under this Agreement;

(f) any actions, activities or practices of Guarantor or Consignee or any of its officers, directors, employees, agents, representatives or helpers which either do, or in the opinion of Bakery are likely to, materially damage the reputation of Bakery and/or Bakery's relations or reputation with consumers, retail stores or any other purchaser of Consigned Products;

(g) Guarantor's or Consignee's insolvency or admission in writing of his/her or its inability to pay his/her or its debts as they mature;

(h) the filing of voluntary bankruptcy petition by Guarantor or Consignee or his/her or its failure to vacate an involuntary bankruptcy petition within sixty days after date of filing;

(i) failure of Guarantor or Consignee to vacate the appointment of a receiver or trustee of Guarantor's or Consignee's business or assets within sixty days after the date of appointment; or

(j) a general assignment by Guarantor or Consignee for the benefit of his/her or its creditors.



EXHIBIT A

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

(k) the failure of the Guarantor to be, and at all times remain, the owner, free and clear of all liens, encumbrances and pledges, of a majority of all shares or membership interests of each class of securities or membership interests issued and outstanding by the Consignee, including, without limitation a majority of all voting securities, common stock or otherwise, of the Consignee. Termination of this Agreement and the Distributorship pursuant to this Paragraph shall operate to release all rights and obligations hereunder of both Bakery and Consignee except Consignee's right to receive compensation therefor in accordance with the established business practices of Bakery, and each party's right to receive any favorable balances and obligation to pay any adverse balances.

20. BAKERY'S OPTION TO BUY DISTRIBUTORSHIP. Bakery shall have the right in its discretion to purchase all or any portion of the Distributorship at any time upon written notice to Consignee. Bakery shall become the owner of the Distributorship, or the portion being purchased, on the date specified in the notice, whether or not a final purchase price has been agreed upon or determined, as provided below. Bakery may begin operating the Distributorship, or the portion being purchased, for its own account on such date. If Bakery elects to purchase all or any portion of the Distributorship pursuant to this Paragraph, it will pay to Consignee a sum equal to (a) the fair market value of the Distributorship, or the portion thereof being purchased, as the case may be, on the date set forth in the written notice plus (b) 25% of such fair market value, to be determined either by agreement between Bakery and Consignee or, if they shall be unable to agree, by three arbitrators, one of whom shall be chosen by Bakery and one by Consignee and the third by the two first chosen. Each party to such arbitration shall pay all fees and expenses incurred by it in connection with such arbitration, including, without limitation, the fees and expenses of the arbitrator chosen by it; and the fees and expenses of the third arbitrator shall be shared equally by Consignee and Bakery. The determination of fair market value by a majority of the three arbitrators shall be final and binding upon both Bakery and Consignee for the purpose of this Paragraph. Notice of purchase pursuant to this Paragraph shall operate to release all rights and obligations hereunder of both Bakery and Consignee except (a) the right to receive any favorable balances and the obligation to pay any adverse balances and (b) the rights and obligations with respect to payment and arbitration stated in this Paragraph.

21. TERMINATION OF CONSIGNMENT AGREEMENT BY CONSIGNEE. Consignee shall have the right in its discretion to terminate this Agreement at any time upon thirty days written notice to Bakery. Termination pursuant to this Paragraph shall operate to release all rights and obligations hereunder of both Bakery and Consignee except the right to receive any favorable balances and the obligation to pay any adverse balances.

22. DEATH OF GUARANTOR; DISSOLUTION OF CONSIGNEE.

(a) In the case of the Guarantor's death, all the terms of this Agreement (see particularly Paragraph 6) shall continue in effect during the next 90 days. If Consignee shall not have sold this distributorship pursuant to Paragraph 18 within such 90 day period, all rights and obligations hereunder of Bakery and Consignee shall terminate at the expiration of such period except (i) the right to receive any favorable balances and the obligation to pay any adverse balances and (ii) the right of Consignee to receive and the obligation of Bakery to pay to Consignee the entire proceeds (subject, however to Bakery's lien per Paragraph 16) of any sale of this Distributorship (in whole or in part) made or contracted to be made by Bakery within the next 90 days; provided, however, that if Bakery shall have provided distribution services within all or any portion of the territory during all or any portion of the period from the expiration of the first 90 day period to the date of such sale, Bakery may deduct from the proceeds of sale any excess of its expense over income in providing such services. If Bakery provides emergency distribution service under Paragraph 6 during all or any portion of the first 90 day period, any excess of its income over expense in providing such service shall be paid to Consignee (subject to any right of setoff that may exist), but Consignee shall not be liable to Bakery or any excess of its expense over income in providing such services, although any such excess of expense may be deducted from the proceeds of sale.

(b) In the event that the corporate existence of the Consignee shall be liquidated, dissolved or in any other way terminated or fail to remain in good standing with the state in which it is incorporated, or in the event that the Consignee shall be merged with or acquired by any other person or entity or a controlling interest in the Consignee shall be acquired by any person or entity other than Consignee, then this Agreement, and all rights and obligations of Bakery and Consignee hereunder, shall terminate immediately except (a) the right to receive any favorable balances and the obligation to pay any adverse balances and (b) the right of Consignee to receive and the obligation of Bakery to pay to Consignee the entire proceeds (subject, however, to Bakery's lien per Paragraph 16) of any sale of this Distributorship (in whole or in part) made or contracted to be made by Bakery within the next 90 days; provided however, that if Bakery shall have provided distribution service within all or any portion of the territory during all or any portion of the period from such termination to the date of such sale, Bakery may deduct from the proceeds of sale any excess of its expense over income in providing such services.

23. TERMINATION OF CONSIGNMENT AGREEMENT WITHOUT CAUSE. Bakery shall have the right in its discretion to terminate this Agreement at any time without cause upon written notice to the Consignee. Upon termination pursuant to this Paragraph the Bakery will pay to the Consignee a sum equal to (a) the fair market value of the Distributorship on the termination date plus (b) 25% of such fair market value, to be determined either by agreement between Bakery and Consignee or, if they shall be unable to agree, by three arbitrators, one of whom shall be chosen by Bakery and one by Consignee and the third by the two first chosen. Each party to such arbitration shall pay all fees and expenses incurred by it in connection with such arbitration, including, without limitation, the fees and expenses of the arbitrator chosen by it; and the fees and expenses of the third arbitrator shall be shared equally by Consignee and Bakery. The determination of fair market value by a majority of the three arbitrators shall be final and binding upon both Bakery and Consignee for the purpose of this Paragraph. Termination pursuant to this Paragraph shall operate to release all rights and obligations hereunder of both Bakery and Consignee except (i) the right to receive any favorable balances and the obligation to pay any adverse balances and (ii) the rights and obligations with respect to payment and arbitration stated in this Paragraph. This Paragraph, and the rights and remedies set forth in this Paragraph, shall constitute the Consignee's sole remedy in the event of a termination of this Agreement without cause.

24. WITHHOLDING PRODUCT. Upon Consignee's failure to fulfill any of its obligations under this Agreement or upon the occurrence of any of the events referred to in Paragraph 19, Bakery shall have the right, without thereby terminating this Agreement,

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

immediately to discontinue shipment of Consigned Products to Consignee until such time as Consignee shall have completely remedied such failure or occurrence, and no such discontinuance shall be, or be deemed to be, a waiver by Bakery of any of its rights or remedies under this Agreement or at law or in equity, including without limitation, the right to terminate this Agreement for the same failure or occurrence. Bakery's rights and remedies under this Paragraph shall be in addition to, and may be exercised concurrently with, all other remedies available to it under this Agreement or at law or in equity.

25. NOTICES. All notices which are required to or which may be given under the terms hereof shall be in writing and shall be deemed given when deposited in the United States mails, postage prepaid, and addressed to the other party at the address designated for such party on the cover page hereof. Either party may change such address by giving notice of a new address.

26. DURATION OF CONSIGNMENT AGREEMENT. This Agreement shall continue in effect until terminated in the manner provided in Paragraphs 19, 21, 22 or 23, until Bakery has given Consignee written notice of Bakery's election to purchase all or any portion of the Distributorship, as provided in Paragraph 20, or until Bakery has purchased all or any portion of the Distributorship pursuant to the Right of First Refusal, as provided in Paragraph 17. In the event that Bakery has given Consignee written notice of its election to purchase a portion of the Distributorship pursuant to the Right of First Refusal as provided in Paragraph 17, the parties shall promptly enter into a new Consignment Agreement in substantially the form hereof, except for the modification of the Description of Territory in Schedule A to reflect such purchase.

27. GENERAL. The terms of this Agreement shall be construed so as to carry into effect its true intent and meaning, and any ambiguities shall be construed and any inconsistencies shall be reconciled accordingly. Any consent, permission, authorization or waiver given hereunder with respect to any continuing act or condition may be subsequently revoked in the same manner as given. Except as expressly set forth herein, this Agreement may not be assigned by Consignee.

28. ENTIRETY OF CONSIGNMENT AGREEMENT. This Agreement represents the entire agreement between Bakery and Consignee and supersedes any and all prior agreements or understandings between Bakery and Consignee, whether written or oral, regarding distribution of Consigned Products. This Agreement may not be amended orally or by custom or conduct but only by a writing signed by both Bakery and Consignee.

Dated **November 17, 2025**

This Consignment Agreement is accepted upon the terms stated above.

**APPROVED:**

**Augustyn Distributing, LLC**

E-Signed : 11/08/2025 07:43 AM CST
Mark Augustyn
augustyn.mark@yahoo.com
IP: 35.144.16.141
Sertifi Electronic Signature
DocID: 20251104125121853

By:________________________________

Mark Augustyn

Its: SOLE MEMBER

**Pepperidge Farm, Incorporated**

By:________________________________

Michael Rosenblatt

Its: Vice President, Sales Operations & Transformation Strategy

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

# GUARANTY

IN CONSIDERATION of the execution and delivery of that certain Distribution Agreement by and between **Augustyn Distributing, LLC** ("Distributor") and Pepperidge Farm, Incorporated ("Pepperidge Farm") dated **November 17** (the "Agreement"), and for other good and valuable consideration, the receipt of which is acknowledged, the undersigned Guarantor hereby represents, warrants and agrees as follows:

1. Guarantor is, and at all-time hereafter shall remain, the owner, free and clear of all liens, security interests, and claims or rights of others, of a majority of all issued outstanding shares of each class of securities, common stock or otherwise, of the Distributor, including, without limitation, its voting securities (such securities owned by Guarantor being hereafter referred to as the "Securities").

2. Guarantor shall not sell, assign, pledge, encumber or otherwise transfer all or any portion of the Securities to any person, firm, corporation or other entity without the prior written consent of Pepperidge Farm.

3. Guarantor shall, and hereby does, guaranty the full, complete and timely performance by Distributor of each and every obligation of Distributor under the foregoing Agreement (each, an "Obligation").

4. Guarantor waives: (a) notice of the acceptance by Pepperidge Farm, Incorporated, and its affiliates, successors and assigns (each, a "Beneficiary"); (b) notice of the existence or creation or non-payment or non-performance of all or any Obligations; (c) presentment, demand, notice of dishonor, protest and all other notices whatsoever; and (d) all diligence in collection or protection of or realization upon the Obligations or any thereof, any obligation hereunder, or any security for or guaranty of any of the foregoing. A Beneficiary may, from time to time, without notice to Guarantor, assign (collaterally or otherwise) or transfer any or all of the Obligations or any interest therein and each and every assignee or transferee of any of the Obligations shall be entitled to the benefits of this Guaranty.

5. The obligations of Guarantor under this Guaranty shall be absolute, continuing and unconditional irrespective of any circumstance whatsoever which might constitute a legal or equitable discharge or defense of Guarantor, including, without limitation, (a) the genuineness, validity, regularity or enforceability of any of the Obligations; (b) any amendment, waiver or other modification of the Agreement; (c) the extension of the time for or waiver of, at any time or from time to time, without notice to the Guarantor, Distributor's performance of or compliance with any of its obligations under the Agreement; (d) any merger or consolidation of Distributor or the Guarantor into or with any other person; (e) any change in the ownership of any shares of capital stock of Distributor; (f) the liquidation, dissolution, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar proceedings affecting the status, existence, assets or obligations of, Distributor, or the disaffirmance with respect to Distributor of the Agreement in any such proceeding, or (g) any other actions, occurrences or circumstances whatsoever. This Guaranty is an absolute, present and continuing guaranty of payment and performance and not of collectability and is in no way conditional or contingent upon any attempt to collect from Distributor any unpaid amounts due or otherwise to enforce performance by Distributor.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as of 11/08/2025.

*Mark Augustyn*
augustyn.mark@yahoo.com

______________________________

**Guarantor's Signature**

Name: **Mark Augustyn**



**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

# SCHEDULE A

## DESCRIPTION OF TERRITORY

See the separately attached Territory Description and illustrative Map for reference.

**APPROVED:**

**Augustyn Distributing, LLC**

Mark Augustyn
augustyn.mark@yahoo.com

By: ______________________

Mark Augustyn

Its: SOLE MEMBER

**Pepperidge Farm, Incorporated**

By: ______________________

Michael Rosenblatt

Its: Vice President, Sales Operations & Transformation Strategy



**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

# SCHEDULE B
## LIST OF CONSIGNED PRODUCTS

## (SUBJECT TO MODIFICATION PER PARAGRAPH 10)

**Milano**

7412 Milano

7435 Orange Milano

7472 Double Chocolate Milano

7481 Raspberry Milano

7567 Milk Chocolate Milano

7947 Mint Milano

8735 Amaretto Milano

8736 Black & White Milano

9038 Chocolate Raspberry Milano

9043 Chocolate Mint Milano

**Entertaining - Boxed Cookies**

7233 Distinctive Selection Large (18 ct)

7521 Golden Orchard Assortment

7704 Ginger Family (18ct)

7912 9 Cup Assortment Holiday Shipper (24 CT)

8310 Chocolate Collection

**Entertaining – Pirouettes**

8781 Mint Chocolate Pirouette

8782 Chocolate Fudge Pirouette

8783 Chocolate Hazelnut Pirouette

8784 French Vanilla Pirouette

**Chocolate Drenched**

9006 Milk Chocolate Drenched Milano

9007 Dark Chocolate Drenched Milano

9008 Chocolate Drenched Mint Milano

9009 Chocolate Drenched Milano Shipper

**Single Serve Goldfish**

7574 Cinnamon GF Grahams,SS (Each Pouch)

7760 Cheddar Cheese GF, SS (Each Pouch)

7867 Cheddar Cheese Goldfish 2 oz.

8127 Goldfish Colors Carton 2 oz.

8799 Cheddar GF 2.5oz Grab Bag

8800 GF Colors 2.25oz Grab Bag

8801 FB Cheddar 2.25oz Grab Bag

9000 Variety Pack (Cheddar GF/ Pretzel GF/ Minin Nantucket 9ct)

9001 Goldfish Colors 9ct. Multipack (1.1oz Pouch)

9002 Flavor Blasted Xtra Cheddar - 9ct

9003 Cheddar Cheese GF, SS 9ct-1.25 oz

9133 12ct Whole Grain Cheddar GF Multi-pack

9137 9ct Whole Grain Cheddar GF Multi-pack

**Baked Naturals**

8932 Wheat Crisps - Zesty Tomato Herb

8934 Wheat Crisps - Toasted Wheat

8942 Pretzel Thins - Simply Pretzel

8943 Snack Sticks - Artisan Cheese

8947 Snack Sticks - Toasted Sesame

8948 Pretzel Thins - Savory Cheddar

9215 Baked Naturals Pre-packed Shipper

**Snack Sticks**

7802 Pumpernickel

7803 Sesame

7805 Three Cheese

**Distinctive Crackers**

7144 Holiday Quartet DC Shipper (24 CT)



EXHIBIT A

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

**Gifting**

9021 Holiday Gift Box

**Other Distinctive Bag**

7410 Bordeaux

7419 Geneva

7420 Brussels Mint

7946 Brussels

7952 Butter Chessmen

8908 Tahiti

9042 Chocolate Chessman

**PF Chocolate Chunk – Crispy**

7522 Tahoe

7708 Chesapeake

7712 Sausalito

7713 Nantucket

7860 Double Chocolate Nantucket

9193 Crispy Chocolate Chunk - White & Milk Chocolate

**PF Chocolate Chunk - Soft Baked**

7821 SB Chocolate Chunk – Nantucket

7869 SB Choc Macadamia – Sausalito

7884 SB Oatmeal Raisin - Santa Cruz

8203 SB Dark Chocolate Brownie – Captiva

8206 SB Caramel – Carmel

8469 SB Sugar Cookie

8470 SB Snickerdoodle

8899 SB Oatmeal

8900 SB Milk Chocolate

8901 SB Molasses

9192 SB Chocolate Chunk - White & Milk Chocolate

**Fruit Cookies**

7462 Verona Apricot Raspberry

7447 Quartet Cracker Asst.

7477 Golden Butter

7487 Hearty Wheat

8985 Classic Water

**Bag Goldfish**

8089 Holiday - Red & Green Goldfish

8539 Goldfish Colors

8546 Parmesan Cheese

8547 Cheddar Cheese

8550 Original

8554 Low Salt Cheddar

8560 Pizza

8561 Baby Cheddar

8562 Pretzel

8563 Bilingual Cheddar

8564 Calcium

8578 Whole Grain Cheddar GF

8930 Starfish Cheddar

**Flavor Blasted Goldfish**

8548 Flavor Blasted Xtra Cheddar GF

8551 Flavor Blasted Jalapeno Queso GF

8552 Flavor Blasted Nothin' but Nacho GF

8553 Flavor Blasted Xplosive Pizza GF

8886 Flavor Blasted Blazin Buffalo GF

**Goldfish Box**

8172 Extra Cheddar Flavor Blasted Goldfish

8639 Goldfish Colors

8708 Cheddar GF

**Goldfish Box - 18 oz.**

7579 18 oz Cheddar Cheese



EXHIBIT A

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

7464 Verona Strawberry

9058 Verona Apple Caramel

9059 Verona Blueberry

9109 Montieri Peach Tart

9110 Montieri Apple Cinnamon Tart

9111 Montieri Raspberry Tart

9177 Fruit Cookies Prepacked Shipper

**Old Fashioned/Homestyle**

7438 Sugar

7444 Shortbread

7445 Gingermen

**100 Calorie Pack Cookies**

8973 Butter Chessman 100 Calorie Pack

8975 Chocolate Chessman 100 Calorie Pack

8976 Chocolate Chunk 100 Calorie Pack

**Single Serve Cookies**

7515 Milano 2 Pk.

7619 Sausalito

7668 Brussels 2Pk.

7696 Nantucket

7796 Milano 3 Pk., (Each Pouch)

7875 Milano 3 Pk., 9ct Tray (comprised of 7796)

7877 CCC Minis, 9ct tray

8797 Mini Chessman Grab Bag

8798 Mini Nantucket Grab Bag

8854 Dark Chocolate Brownie 2-pack

8855 Soft Baked Oatmeal Raisin 2-pack

8884 Milano 3pk. Grab Bag

**Goldfish Variety Packs**

7523 Goldfish On The Go Cheddar (Pouch)

7615 Goldfish On The Go Cheddar

7639 Goldfish On The Go Variety Pk

7650 Goldfish On The Go Variety Pk (Pouch)

**100 Calorie Pack Goldfish**

8745 Baby Wholegrain Cinnamon 100 Calorie Pack

8748 Baby FB Wholegrain Cheddar 100 Calorie Pack

8749 Baby Wholegrain Cheddar 100 Calorie Pack

8763 Baby Wholegrain Chocolate 100 Calorie Pack

8869 Pretzel 100 Calorie Pack

**Goldfish Novelty Packs**

8392 0.4oz Cheddar GF Pouches

8534 0.4oz pouches FBGF Extra Cheddar

For distribution of the foregoing products to direct billing customers of Bakery under Paragraph 3 (b) of this Agreement, Consignee will, subject to the terms of that Paragraph 3 (b), to be paid a percentage of the net proceeds of such sales payable to Bakery calculated at the rate of 20 % of the published prices in effect from time to time for Consigned Products.



EXHIBIT A

**26SL-CC06358**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Augustyn Distributing, LLC
Plaintiff/Petitioner

vs.

Campbell Sales Company of New Jersey, et al
Defendant/Respondent

September 18, 2026
Date

Case Number

Division

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Augustyn Distributing, LLC (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Marybeth Rice, Richard A Raymond, Mark Braden, 1528 S. Big Bend Blvd. Richmond Heights, MO 63117 314-644-3955
Name of Process Server — Address — Telephone

Martin Hueckel, Danessa C. Seward 1528 S. Big Bend Blvd. Richmond Heights, MO 63117 314-644-3955
Name of Process Server — Address or in the Alternative — Telephone

Monica D. Banks, Tommy Webb Lawrence G. Roth 1528 S. Big Bend Blvd. Richmond Heights, MO 63117 314-644-3955
Name of Process Server — Address or in the Alternative — Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
Campbell Sales Co of NJ- CSC Lawyers, RA
Name
221 Bolivar Street
Address
Jefferson City, Missouri 65101
City/State/Zip

SERVE:
Snyder's-Lance, Inc.,- CSC Lawyers, RA
Name
221 Bolivar Street
Address
Jefferson City, Missouri 65101
City/State/Zip

SERVE:
Pepperidge Farm, Inc.-CSC Lawyers, RA
Name
221 Bolivar Street
Address
Jefferson City, Missouri 65101
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By ______________________
Deputy Clerk

______________________
Date

/s/ David G. Bender
Signature of Attorney/Plaintiff/Petitioner
53482
Bar No.
7733 Forsyth Blvd.,Ste 400,St. Louis,MO 63105
Address
(314) 726-6868 — (314) 726-6786
Phone No. — Fax No.

CCADM62-WS Rev. 08/16

**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com. (LawandPublicSafety/Circuit/Forms).

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.



**EXHIBIT A**

**26SL-CC06358**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Augustyn Distributing, LLC
Plaintiff/Petitioner

vs.

Campbell Sales Company of New Jersey, et al
Defendant/Respondent

September 18, 2026
Date

Case Number

Division

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Augustyn Distributing, LLC (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Marybeth Rice, Richard A Raymond, Mark Braden, 1528 S. Big Bend Blvd. Richmond Heights, MO 63117 314-644-3955
Name of Process Server / Address / Telephone

Martin Hueckel, Danessa C. Seward 1528 S. Big Bend Blvd. Richmond Heights, MO 63117 314-644-3955
Name of Process Server / Address or in the Alternative / Telephone

Monica D. Banks, Tommy Webb Lawrence G. Roth 1528 S. Big Bend Blvd. Richmond Heights, MO 63117 314-644-3955
Name of Process Server / Address or in the Alternative / Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
Campbell Sales Co of NJ- CSC Lawyers, RA
Name
221 Bolivar Street
Address
Jefferson City, Missouri 65101
City/State/Zip

SERVE:
Snyder's-Lance, Inc.,- CSC Lawyers, RA
Name
221 Bolivar Street
Address
Jefferson City, Missouri 65101
City/State/Zip

SERVE:
Pepperidge Farm, Inc.-CSC Lawyers, RA
Name
221 Bolivar Street
Address
Jefferson City, Missouri 65101
City/State/Zip

SERVE:

Name

Address

City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By /S/ Adam Dockery
Deputy Clerk

09/21/2026
Date

/s/ David G. Bender
Signature of Attorney/Plaintiff/Petitioner
53482
Bar No.
7733 Forsyth Blvd.,Ste 400,St. Louis,MO 63105
Address
(314) 726-6868 (314) 726-6786
Phone No. Fax No.



**EXHIBIT A**

Electronically Filed - St Louis County - September 18, 2026 - 11:36 AM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, http://www.stlouisco.com. (LawandPublicSafety/Circuit/Forms).

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>RICHARD M STEWART | **Case Number: 26SL-CC06358** | |
| Plaintiff/Petitioner:<br>AUGUSTYN DISTRIBUTING LLC<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DAVID GORDON BENDER<br>7733 FORSYTH<br>4TH FLOOR<br>SAINT LOUIS, MO 63105 | |
| Defendant/Respondent:<br>CAMPBELL SALES COMPANY OF NEW JERSEY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Breach of Contract | | |

**The State of Missouri to: SNYDER'S-LANCE, INC.**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

21-SEP-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)
at ______________ (time).

______________________________ Printed Name of Officer or Server

______________________________ Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ ______________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.



**EXHIBIT A**

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## <u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.



**EXHIBIT A**

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

**EXHIBIT A**

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>RICHARD M STEWART | **Case Number: 26SL-CC06358** | |
| Plaintiff/Petitioner:<br>AUGUSTYN DISTRIBUTING LLC<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DAVID GORDON BENDER<br>7733 FORSYTH<br>4TH FLOOR<br>SAINT LOUIS, MO 63105 | |
| Defendant/Respondent:<br>CAMPBELL SALES COMPANY OF NEW JERSEY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Breach of Contract | | (Date File Stamp for Return) |

**The State of Missouri to:** **PEPPERIDGE FARM, INC.**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

| 21-SEP-2026 | /S/ Adam Dockery |
|---|---|
| Date | Clerk |

**Further Information:**
AD



**EXHIBIT A**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ______________ (date)

at ______________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: ______________ ______________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.


**EXHIBIT A**

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.



**EXHIBIT A**

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.



**EXHIBIT A**

**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

**EXHIBIT A**

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>RICHARD M STEWART | **Case Number: 26SL-CC06358** | |
| Plaintiff/Petitioner:<br>AUGUSTYN DISTRIBUTING LLC<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DAVID GORDON BENDER<br>7733 FORSYTH<br>4TH FLOOR<br>SAINT LOUIS, MO 63105 | |
| Defendant/Respondent:<br>CAMPBELL SALES COMPANY OF NEW JERSEY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Breach of Contract | | (Date File Stamp for Return) |

**The State of Missouri to: CAMPBELL SALES COMPANY OF NEW JERSEY**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

21-SEP-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD



**EXHIBIT A**

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ____________________________________________________________.

Served at ____________________________________________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)

at ______________ (time).

______________________________ ______________________________

Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ ______________________________

Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.



**EXHIBIT A**

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.



**EXHIBIT A**

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

**EXHIBIT A**

Electronically Filed - ST LOUIS COUNTY - September 29, 2026 - 03:22 PM

IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| AUGUSTYN DISTRIBUTING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC06358 |
| vs. | ) | |
| | ) | Division 2 |
| CAMPBELL SALES COMPANY OF NEW JERSEY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**RETURN OF SERVICE**

Summons and Petition – Injunctive Relief, Accounting, Breach of Contract and Negligence was served on Defendants Pepperidge Farm, Inc., Snyder's-Lance, Inc., and Campbell Sales Company of New Jersey's Registered Agent.

ROSENBLUM GOLDENHERSH,

*/s/ David G. Bender*

David G. Bender, #53482
7733 Forsyth, 4th Floor
Clayton, MO 63105-1812
(314) 726-6868
(314) 726-6786 Facsimile
dbender@rgsz.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 29th day of September, 2026, the foregoing was filed electronically with the Clerk of Court.

*/s/ David G. Bender*

**EXHIBIT A**

Electronically Filed - ST LOUIS COUNTY - September 29, 2026 - 03:22 PM

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>RICHARD M STEWART | **Case Number: 26SL-CC06358** | |
| Plaintiff/Petitioner:<br>AUGUSTYN DISTRIBUTING LLC<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DAVID GORDON BENDER<br>7733 FORSYTH<br>4TH FLOOR<br>SAINT LOUIS, MO 63105 | |
| Defendant/Respondent:<br>CAMPBELL SALES COMPANY OF NEW JERSEY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Breach of Contract | | (Date File Stamp for Return) |

**The State of Missouri to:** **PEPPERIDGE FARM, INC.**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

21-SEP-2026 — Date

/S/ Adam Dockery — Clerk

**Further Information:**
AD

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-11801**
1 of 2 (26SL-CC06358)
Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**EXHIBIT A**

Electronically Filed - ST LOUIS COUNTY - September 29, 2026 - 03:22 PM

# AFFIDAVIT OF SERVICE

**State of Missouri** **County of St. Louis**

Case Number: 26SL-CC06358

Plaintiff:
**AUGUSTYN FISTRIBUTING, LLC**

vs.

Defendant:
**CAMPBELL SALES COMPANY OF NEW JERSEY**

For:
Marybeth Rice
SRI PROCESS
1528 S. Big Bend Blvd.
Richmond Heights, MO 63117

Received by SRI PROCESS to be served on **Pepperodge Famr, Inc. c/o CSC, 221 Bolivar St., Jefferson City, MO 65109.**

I, Rufus R. Harmon, being duly sworn, depose and say that on the **22nd day of September, 2026** at **10:26 am, I:**

served by delivering a true copy of the **Summons and Petition** with the date and hour of service endorsed thereon by me to: **Lauren Shipley** of CSC-Lawyers Incorporating Service Company, as the Authorized Agent for **Pepperodge Famr, Inc. c/o CSC,** and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 42, Sex: F, Race/Skin Color: White, Height: 5'4", Weight: 130, Hair: Brown, Glasses: N

I certify that I am over the age of 18, competent, have no interest nor will benefit in the above action, and in good standing in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 27th day of September 2026 by the affiant who is personally known to me.

[signature]
NOTARY PUBLIC

KELSEY SCHRIMPF
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 23381805
My Commission Expires 08-14-2027

[signature: Rufus R. Harmon]
**Rufus R. Harmon**
Process Server

**SRI PROCESS**
**1528 S. Big Bend Blvd.**
**Richmond Heights, MO 63117**
**(314) 644-3955**

Our Job Serial Number: RRH-2026002292
Ref: 353879

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0g

**EXHIBIT A**

Electronically Filed - ST LOUIS COUNTY - September 29, 2026 - 03:22 PM

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>RICHARD M STEWART | **Case Number: 26SL-CC06358** | |
| Plaintiff/Petitioner:<br>AUGUSTYN DISTRIBUTING LLC<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DAVID GORDON BENDER<br>7733 FORSYTH<br>4TH FLOOR<br>SAINT LOUIS, MO 63105 | |
| Defendant/Respondent:<br>CAMPBELL SALES COMPANY OF NEW JERSEY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Breach of Contract | | (Date File Stamp for Return) |

**The State of Missouri to: CAMPBELL SALES COMPANY OF NEW JERSEY**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

21-SEP-2026 — Date

/S/ Adam Dockery — Clerk

**Further Information:**
AD

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-11802**
1 of 2 (26SL-CC06358)

Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**EXHIBIT A**

Electronically Filed - ST LOUIS COUNTY - September 29, 2026 - 03:22 PM

# AFFIDAVIT OF SERVICE

**State of Missouri** **County of St. Louis**

Case Number: 26SL-CC06358

Plaintiff:
**AUGUSTYN FISTRIBUTING, LLC**

vs.

Defendant:
**CAMPBELL SALES COMPANY OF NEW JERSEY**

For:
Marybeth Rice
SRI PROCESS
1528 S. Big Bend Blvd.
Richmond Heights, MO 63117

Received by SRI PROCESS to be served on **Campbell Sales Company of New Jersey c/o CSC, 221 Bolivar St., Jefferson City, MO 65109.**

I, Rufus R. Harmon, being duly sworn, depose and say that on the **22nd day of September, 2026** at **10:26 am, I:**

served by delivering a true copy of the **Summons and Petition** with the date and hour of service endorsed thereon by me to: **Lauren Shipley** of CSC-Lawyers Incorporating Service Company, as the Authorized Agent for **Campbell Sales Company of New Jersey c/o CSC,** and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 42, Sex: F, Race/Skin Color: White, Height: 5'4", Weight: 130, Hair: Brown, Glasses: N

I certify that I am over the age of 18, competent, have no interest nor will benefit in the above action, and in good standing in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 27th day of September, 2026 by the affiant who is personally known to me.

[signature]
NOTARY PUBLIC

KELSEY SCHRIMPF
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 23381805
My Commission Expires 08-14-2027

[signature: Rufus R. Harmon]
Rufus R. Harmon
Process Server

**SRI PROCESS**
**1528 S. Big Bend Blvd.**
**Richmond Heights, MO 63117**
**(314) 644-3955**

Our Job Serial Number: RRH-2026002293
Ref: 353879

Copyright © 1992-2020 DreamBuilt Software, LLC. - Process Server's Toolbox V8.0g

**EXHIBIT A**

Electronically Filed - ST LOUIS COUNTY - September 29, 2026 - 03:22 PM

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>RICHARD M STEWART | **Case Number: 26SL-CC06358** |
| Plaintiff/Petitioner:<br>AUGUSTYN DISTRIBUTING LLC<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DAVID GORDON BENDER<br>7733 FORSYTH<br>4TH FLOOR<br>SAINT LOUIS, MO 63105 |
| Defendant/Respondent:<br>CAMPBELL SALES COMPANY OF NEW JERSEY | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Breach of Contract | |

(Date File Stamp for Return)

**The State of Missouri to:** **SNYDER'S-LANCE, INC.**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

21-SEP-2026 — Date

/S/ Adam Dockery — Clerk

**Further Information:**
AD

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-11800**
1 of 2 (26SL-CC06358)

Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**EXHIBIT A**

Electronically Filed - ST LOUIS COUNTY - September 29, 2026 - 03:22 PM

# AFFIDAVIT OF SERVICE

**State of Missouri** **County of St. Louis**

Case Number: 26SL-CC06358

Plaintiff:
**AUGUSTYN FISTRIBUTING, LLC**

vs.

Defendant:
**CAMPBELL SALES COMPANY OF NEW JERSEY**

For:
Marybeth Rice
SRI PROCESS
1528 S. Big Bend Blvd.
Richmond Heights, MO 63117

Received by SRI PROCESS to be served on **Snyder's - Lance, Inc. c/o CSC, 221 Bolivar St., Jefferson City, MO 65109.**

I, Rufus R. Harmon, being duly sworn, depose and say that on the **22nd day of September, 2026** at **10:26 am, I:**

served by delivering a true copy of the **Summons and Petition** with the date and hour of service endorsed thereon by me to: **Lauren Shipley** of CSC-Lawyers Incorporating Service Company, as the Authorized Agent for **Snyder's - Lance, Inc. c/o CSC,** and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 42, Sex: F, Race/Skin Color: White, Height: 5'4", Weight: 130, Hair: Brown, Glasses: N

I certify that I am over the age of 18, competent, have no interest nor will benefit in the above action, and in good standing in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 27th day of September, 2026 by the affiant who is personally known to me.

NOTARY PUBLIC

KELSEY SCHRIMPF
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 23381805
My Commission Expires 08-14-2027

Rufus R. Harmon
Process Server

**SRI PROCESS**
**1528 S. Big Bend Blvd.**
**Richmond Heights, MO 63117**
**(314) 644-3955**

Our Job Serial Number: RRH-2026002294
Ref: 353879

Copyright © 1992-2026 DreamBuilt Software, LLC - Process Server's Toolbox V9.0g

**EXHIBIT A**